IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| CHERYL MOANA PANG,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. 21-cv-00043-DKW-KJM<br><br><br>**ORDER REVERSING DECISION OF ACTING COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

Plaintiff Cheryl Moana Pang appeals the denial of disability insurance benefits, arguing that the Administrative Law Judge (ALJ) improperly considered the medical opinions of Pang's treating physician, Dr. Linda Rowan, in various ways.   Having reviewed the parties' briefs and the medical record, the Court agrees with Plaintiff in at least one respect: in addressing Dr. Rowan's opinions, the ALJ appears to have believed that the doctor prepared a document containing certain extreme limitations on the work Plaintiff could do.   The document, however, is unsigned, undated, and there is no indication in the record that the words or limitations therein were authored by Dr. Rowan.   Moreover, in light of the ALJ's discussion of this issue, arguably, the ALJ weighed the document against Dr. Rowan.   As a result, this case is REMANDED for the ALJ to either determine the

source of the document in question or re-consider Dr. Rowan's actual opinions

independent of the same.

## BACKGROUND

**I.    Review of Disability Claims**

A five-step process exists for evaluating whether a person is disabled under

the Social Security Act (SSA).   20 C.F.R. § 404.1520.   First, the claimant must

demonstrate that she is not currently involved in any substantial, gainful activity.

*Id*. §§ 404.1520(a)(4)(i), (b).   Second, the claimant must show a medically severe

impairment or combination of impairments that significantly limit her physical or

mental ability to do basic work activities.   *Id*. §§ 404.1520(a)(4)(ii), (c).   Third, if

the impairment matches or is equivalent to an established listing under the governing

regulations, the claimant is judged conclusively disabled.   *Id*.

§§ 404.1520(a)(4)(iii), (d).

If the claimant's impairment does not match or is not equivalent to an

established listing, the Commissioner makes a finding about the claimant's residual

functional capacity (RFC) to perform work.   *Id*. § 404.1520(e).   The evaluation

then proceeds to a fourth step, which requires the claimant to show her impairment,

in light of the RFC, prevents her from performing work she performed in the past.

*Id*. §§ 404.1520(a)(4)(iv), (e), (f).   If the claimant is able to perform her previous

work, she is not disabled.   *Id*. § 404.1520(f).   If the claimant cannot perform her

past work, though, the evaluation proceeds to a fifth step.   *Id*. §§ 404.1520(a)(4)(v),

(g).   At this fifth and final step, the Commissioner must demonstrate that (1) based

upon the claimant's RFC, age, education, and work experience, the claimant can

perform other work, and (2) such work is available in significant numbers in the

national economy.   *Id*. § 404.1560(c); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th

Cir. 1999) (explaining that, at Step Five, the burden moves to the Commissioner).

If the Commissioner fails to meet this burden, the claimant is deemed disabled.   20

C.F.R. § 404.1520(g)(1).

## II.   Pang's Administrative Proceeding

On July 9, 2020, the ALJ issued a decision finding Pang "not disabled" under

the SSA.   Administrative Record (AR) at 27.   At Step One of the evaluation

process, the ALJ determined that Pang had not engaged in substantial gainful

activity since the alleged onset date of October 9, 2017.   *Id*. at 17.   At Step Two,

the ALJ determined that Pang had the following severe impairments: "herniated

nucleus pulposus of the lumbar spine, status post spinal cord implant; sciatic joint

dysfunction; obesity; diabetes mellitus; psoriatic arthritis; neuropathy; sacroiliitis;

and chronic pain syndrome."   *Id*. at 17-18.   At Step Three, the ALJ determined that

Pang did not have an impairment or combination of impairments that met or

medically equaled the severity of one of the impairments listed in the governing

regulations.   *Id*. at 18-19.

Before reaching Step Four, the ALJ determined that Pang had the residual

functional capacity to perform light work, except as follows:

> She can occasionally lift, carry, push, and pull up to 20 pounds and 10
> pounds or less frequently; she can stand and walk for two hours in an
> eight hour workday; she can sit for six hours in an eight hour workday;
> she can frequently balance; all other postural activities are limited to
> occasionally[,] except no climbing of ladders, ropes, or scaffolds; and
> she cannot work at unprotected heights, around moving machinery, or
> around other hazards.

*Id*. at 19.

At Step Four, the ALJ determined that Pang was unable to perform any past

relevant work.   *Id*. at 25.   At Step Five, the ALJ determined that, in light of Pang's

RFC, age, education, and work experience, Pang could perform jobs existing in

significant numbers in the national economy.   *Id*. at 25-26.   More specifically, a

vocational expert testified that Pang could do the jobs of: sewing machine operator;

telephone quote clerk; sealer; inspector; and sub-assembler.   *Id*. at 26.   This

determination resulted in the ALJ finding that Pang was not disabled from October

9, 2017 through the date of the decision.   *Id*. at 27.

On November 13, 2020, the Appeals Council denied Pang's request for

review of the ALJ's decision.   *Id*. at 1.

## STANDARD OF REVIEW

A court must uphold an ALJ's decision "unless it is based on legal error or is

not supported by substantial evidence."   *Ryan v. Comm'r of Soc. Sec*., 528 F.3d

1194, 1198 (9th Cir. 2008).   "Substantial evidence is more than a mere scintilla but less than a preponderance."   *Id*. (quotation omitted).   Stated differently, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (quotation omitted).   "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."   *Id.* at 679; *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("[Courts] leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.") (citations omitted).

   In addition, a court may not reverse an ALJ's decision on account of an error that is harmless.   *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).   In making this assessment, the Court "look[s] at the record as a whole to determine whether the error alters the outcome of the case."   *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

## DISCUSSION

   In her opening brief, Dkt. No. 15, Pang challenges the ALJ's assessment of the medical opinions of Dr. Linda Rowan.   Among other things, Pang argues that the ALJ erred in rejecting Dr. Rowan's opinions without making citations to the record and by failing to consider their supportability and consistency.   *Id*. at 12-25. With respect to the latter arguments, Pang adds that, in addressing Dr. Rowan's

5

opinions, the ALJ attributed to the doctor opinions for which there is no evidence the doctor made.   *Id*. at 18.

In supposed response, the Acting Commissioner spends the majority of her brief explaining why case law has been "displaced" by new SSA regulations and why the ALJ properly considered the opinions of two doctors not challenged in Plaintiff's opening brief.   Dkt. No. 18 at 9-22.[1]   Eventually, the Acting Commissioner also argues that the ALJ properly considered the opinions of Dr. Rowan.   *Id*. at 22-31.   The Acting Commissioner never addresses, however, Plaintiff's argument that the ALJ misattributed opinions to Dr. Rowan.   *See generally* Dkt. No. 18.

For the reasons discussed below, the ALJ committed legal error in attributing to Dr. Rowan opinions and/or limitations that the record does not reflect Dr. Rowan made.   Moreover, because it appears that this misattribution may have affected the ALJ's analysis of Dr. Rowan's actual opinions, the Court cannot find that it was harmless and must remand for further development, as set forth herein.

The Court begins with the ALJ's discussion of Dr. Rowan's opinions.   The ALJ stated that Dr. Rowan opined that Pang could not work more than 20 hours in a

---

[1]With respect to the "displacement" of existing case law, while it may be understandable for the Acting Commissioner to provide some *brief* background on SSA regulations that are arguably new, it is certainly *not* understandable for the Acting Commissioner to offer that a "new approach on judicial review is now required" when there is *no dispute* that the new regulations apply here. In the future, the Acting Commissioner should not seek leave to file an oversize brief, *see* Dkt. No. 16, when the majority of the arguments raised in said brief are largely irrelevant.

workweek, Pang would miss more than 3 days of work per month, Pang was limited to a less than sedentary range of work, and Pang could not sit, stand, and walk for a combined 8 hours in a workday.   AR at 24.   The ALJ found these opinions to be "unpersua[sive]" because they were not supported by the medical record, which the ALJ determined showed Pang's condition improved after surgery in March 2018 for a spinal stimulator implant.   *Id*.   The ALJ further found that Dr. Rowan's "highly restrictive functional limitations" were not supported by evidence indicating that Pang walked one mile per day for five days of the week, completed vocational rehabilitation, engaged in volunteer work, and planned to fly to Las Vegas, which would have resulted in her sitting "for hours on end…."   *Id*. at 24-25.

The primary concern with the foregoing discussion of Dr. Rowan's alleged opinions is that there is no evidence that the most extreme of them are, in fact, the doctor's opinions.   Notably, the ALJ appeared to be under the belief that Dr. Rowan opined that Pang would miss more than 3 days of work per month, Pang was limited to a less than sedentary range of work, and Pang could not sit, stand, and walk for a combined 8 hours in a workday.   Those opinions, however, cannot be found in Dr. Rowan's treatment notes, unlike the opinion that Pang should work no more than 20 hours per workweek.   Instead, the only record of them is in an unsigned, unnamed,

and undated "Medical Source Statement."   *See* AR at 24 (citing AR at 500-503).[2]

As unsigned and unnamed, the document cannot be ascribed to Dr. Rowan, at least

at this juncture.[3]   As undated, even if the document was from Dr. Rowan, it could be

entirely irrelevant to the ALJ's analysis if, for example, it was completed prior to

Pang's alleged onset date.

      Further, in light of the ALJ's discussion of Dr. Rowan's opinions, the Court

cannot find this error to be harmless.   In particular, it appears clear from the ALJ's

decision that Dr. Rowan lacked credibility due to the extreme limitations found in

the "Medical Source Statement."   For example, the vast majority of the reasons

given for rejecting Dr. Rowan's alleged opinions were directed at the "highly

restrictive functional limitations assessed by [the doctor]"−none of which Dr.

Rowan may have actually assessed.[4]   Therefore, if it should be shown that those

---

[2]When referencing Dr. Rowan's opinions, the ALJ also cited to Dr. Rowan's treatment notes.   All but one of those citations is to treatment notes opining that Pang should be limited to 20 hours of work per week.   AR at 678-681, 713-723.   As for the remaining citation, while it is also one of Dr. Rowan's treatment notes, the same opines neither that Pang should be limited to 20 hours of work per week nor the functional limitations noted in the ALJ's decision.   Instead, the treatment note−from October 2017, *i.e.*, *prior* to Pang's March 2018 surgery−states that Pang should "remain off work" until her next doctor visit.   *Id*. at 414.   That is the same opinion Dr. Rowan reached on a number of occasions leading up to Pang's March 2018 surgery.   *See id*. at 416, 419-420, 422, 425, 428, 431.

[3]In her opening brief, Pang speculates that the "Medical Source Statement" is from Dr. Chelsea Ching-Endow.   Dkt. No. 15 at 18.   The Court makes no finding herein with respect to who authored the document and leaves for the ALJ on remand to make any such determination.

[4]The only reason given that arguably may pertain to Dr. Rowan's actual opinion−that Pang could work only 20 hours per week−is the ALJ's finding that Pang's condition improved after surgery in March 2018.   As an initial matter, given that this finding could equally apply to the more extreme limitations ascribed to Dr. Rowan, it is far from clear what affect the latter had on the ALJ reaching this conclusion.   Second, even on its own merits, it is not clear how Pang's "improve[d]"

opinions were not Dr. Rowan's, it is entirely possible that the ALJ would have reached a different determination as to the persuasiveness of the doctor's actual opinion that Pang could only work 20 hours per week.  *See Fairley v. Astrue*, 2008 WL 4962678, at *5 (E.D. Wash. Nov. 19, 2008) (finding error in the ALJ rejecting one doctor's opinion, in part, on the basis of statements attributable to another doctor).

   As a result, the Court must remand this action for further development of the record.   On remand, *inter alia*, the ALJ must <u>either</u> identify the source/author of the "Medical Source Statement" (AR at 500-503) prior to considering Dr. Rowan's medical opinions <u>or</u> consider Dr. Rowan's medical opinions independent of the Medical Source Statement.   As both parties assert, in considering Dr. Rowan's opinions, the ALJ should apply 20 C.F.R. § 404.1520c (2017) and explain how the factors of supportability and consistency have been considered.[5]

---

condition undermines Dr. Rowan's opinion that she could only work 20 hours per week.   Notably, as mentioned *supra*, prior to the March 2018 surgery, Dr. Rowan opined that Pang should "remain off work…."   *See supra* n.2.   After the surgery, Dr. Rowan opined that Pang could do 20 hours of work per week.   AR at 679.   Twenty hours of work is clearly more than no work at all and, thus, would indicate that Dr. Rowan too believed that Pang's condition had improved.   In other words, simply saying that Pang's condition had "improve[d]" does not explain why Dr. Rowan's 20-hour-a-workweek opinion was unpersuasive.

[5]To the extent other issues are raised in Pang's opening brief, the Court does not address them in light of the findings herein and order remanding to the ALJ.   *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (remanding to the ALJ and, as a result, declining to reach an alternative ground for remand).

## **CONCLUSION**

To the extent set forth herein, the Acting Commissioner's decision, denying Pang's application for disability insurance benefits, is REVERSED.   This case is REMANDED to the Acting Commissioner for further administrative proceedings consistent with this Order.   The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

DATED: January 25, 2022 at Honolulu, Hawaiʻi.



_____
Derrick K. Watson
United States District Judge

*Cheryl Moana Pang v. Kilolo Kijakazi*; Civil No. 21-00043 DKW-KJM; **ORDER REVERSING DECISION OF ACTING COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**